1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY JENKINS, | ) Case No.: 1:11cv01798 AWI DLB |
| | ) |
| Plaintiff, | ) FINDINGS AND RECOMMENDATIONS |
| | ) REGARDING PLAINTIFF'S SOCIAL |
| | ) SECURITY COMPLAINT |
| vs. | ) |
| MICHAEL J. ASTRUE, Commissioner of | ) |
| Social Security, | ) |
| | ) |
| Defendant | ) |

## BACKGROUND

Plaintiff Larry Jenkins ("Plaintiff") seeks judicial review of a final decision of the
Commissioner of Social Security ("Commissioner") denying his application for Supplemental
Security Income ("SSI") pursuant to Title XVI of the Social Security Act.  The matter is
currently before the Court on the parties' briefs, which were submitted, without oral argument, to
the Magistrate Judge for findings and recommendations to the District Court.

## FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed for SSI on October 23, 2008.  AR 141-43.  He alleged disability since
September 3, 2008, due to swollen hands, tendonitis in fingers, high blood pressure, diabetes and

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

allergies.  AR 160.  After being denied initially and on reconsideration, Plaintiff requested a

hearing before an Administrative Law Judge ("ALJ").  AR 77-81, 83-88, 91-92.  On October 18,

2010, ALJ Michael J. Haubner held a hearing.  AR 19-57.  ALJ Haubner denied benefits on

November 10, 2010.  AR 5-14.  On August 25, 2011, the Appeals Council denied review.  AR 1-

3.

<u>Hearing Testimony</u>

ALJ Haubner held a hearing on October 18, 2010.  Plaintiff appeared with his attorney,

Gina Fazio. Vocational expert ("VE") Thomas Dachelet also appeared and testified.  AR 19, 21.

*Plaintiff's Testimony*

Plaintiff was born in 1967.  He completed the 12th grade and attended college for two

months.  AR 28.  Plaintiff confirmed that he has a history of finger tendinitis, high blood

pressure, diabetes, chest pain, "roulette," coronary artery disease, arthralgia in his hands, plantar

fasciitis in his feet, along with a history of adjustment disorder with mixed emotional features,

and some emotional or mental problems.  AR 28-29.

Plaintiff testified that he can lift and carry two pounds.  He can stand for twenty-five

minutes at one time and sit for thirty minutes at one time.  He can walk a block and a half before

he needs to rest.  He is right-handed, but has trouble gripping and grasping with both hands.  The

longest he can grip or grasp is two or three seconds with either hand.  He needs to rest for five

minutes before he can hold something for two or three more seconds.  AR 29-30.

Plaintiff testified that he has criminal convictions for drunk driving, driving under the

influence of cocaine, possession for sale of a controlled substance and fraud.  AR 31.  He last

used street drugs in October 2009 and alcohol in August of 2010.  He has not had a valid driver's

license for eight years, but last drove in October 2009.  AR 34.  He is fully compliant with his

treatment recommendations and takes all of his medications.  Although doctors told him to quit

smoking a year earlier, he still smokes 10 cigarettes a day.    AR 32-33.

Plaintiff indicated that he lives with his mom and his brother.  His brother is on SSI for physical and mental disabilities.  Plaintiff sleeps on the couch in the living room.  He can brush his own teeth, put on his clothes, and shower or bathe.  He is not able to shave himself, but can do buttons and zippers.  He does not cook or prepare simple meals.  He goes out to eat two times a month and attends church every Sunday.  AR 33-35, 38.  He does not do any chores around the house.  AR 36.  He goes for walks every other day for about ten minutes.  AR 37.

On an average day, Plaintiff watches TV for about four hours.  He talks on the telephone and visits people outside of his house every other day.  AR 38.

Plaintiff explained that his hands flare-up all the time.  He cannot close his hand, it's swollen and he's in a lot of pain.  However, he is able to hold a toothbrush with his thumb and index finger.  He cannot make a fist.  AR 39-40.  Plaintiff testified that he can only sit for about 30 minutes at a time because he has sharp pain down his leg, but his main problem is his hands.  Over the last two years, his hands have gotten worse and he has problems every day.  AR 41.

Plaintiff confirmed that he worked with his cousin recycling in 2004 for about four months.  In that job, he lifted thirty pounds.  In 2005, he was doing general labor in production and lifted about twenty pounds loading boxes on a pallet.  Plaintiff also worked for a month making cheese, putting chemicals in a mixer.  In 2008, he worked part-time as a dishwasher at Denny's for six months.  AR 41-44, 47.

*Vocational Expert's Testimony*

In response to questioning, the VE identified Plaintiff's past work as laborer, stores, as medium, SVP 2, unskilled and light as performed.  Plaintiff's job as an apprentice cheese maker was medium per the DOT, light as performed, and unskilled.  AR 47-48.

For the hypotheticals, the ALJ asked the VE to assume a person of the same age, education, language and experience background as Plaintiff.  AR 48.  For the first hypothetical, the ALJ asked the VE to assume a person capable of managing funds and mildly limited in the

ability to remember location and work-like procedures, remember and understand very short and simple instructions, understand and remember detailed instructions, carry out very short and simple instructions, maintain attention and concentration for extended periods, accept instructions from supervisors and respond appropriately to criticisms.   This person was mildly limited in social judgment and awareness and socially appropriate behavior.  This person also was mildly limited in the ability to perform activities within a schedule, maintain regular attendance, function independently and sustain an ordinary routine without special supervision, complete a normal workday or week without interruptions and perform at a consistent pace, interact with coworkers and withstand stress of a routine workday.  The likelihood of emotional deterioration in the work environment was minimal.  The VE testified that this person could perform Plaintiff's past relevant work.  AR 49-50.  The VE explained that the mild limitations "essentially have no effect on eroding the world of work, particularly at the unskilled [level]." AR 50.  This person could perform other unskilled work at all exertional levels.  AR 50.

For the second hypothetical, the ALJ asked the VE to assume a person who is not significantly limited in all functional areas.  The VE testified that this person could perform Plaintiff's past relevant work and other unskilled sedentary through very heavy work.  AR 50.

For the third hypothetical, the ALJ asked the VE to assume a person with mild restrictions of activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence and pace, and insufficient evidence of any repeated episodes of decompensation.  The VE testified that this person could perform Plaintiff's past relevant work and the entire world of unskilled work.  AR 51.

For the fourth hypothetical, the ALJ asked the VE to assume a person able to lift and carry without limitations and no restrictions on standing, walking and sitting.  This person could climb, balance, kneel, crawl, bend, crouch, stoop, walk on uneven terrain, climb ladders and work at heights.  This person has a bilateral impairment in fine and gross manipulation with both

hands, but has motor strength of 5/5 in all extremities, normal motor bulk and tone and normal peripheral pulses.  The VE testified that he could not reduce the world of work at all based on the description, so it would be the same response as for the first three hypotheticals.  AR 52.  The VE further testified that the answer would be the same if combining hypotheticals one and four, two and four and three and four.  AR 52-53.

For the fifth hypothetical, the ALJ asked the VE to assume a person who could lift and carry 20 pounds occasionally, 10 pounds frequently, could stand and walk about six hours out of eight and could sit about six hours of eight.  This person has limited ability in the upper extremities to push and pull and this person should avoid frequent forceful pushing and pulling with either hand.  This person should never climb ladders, ropes and scaffolds, but occasionally could crawl and frequently could climb ramps and stairs, balance, stoop, kneel and crouch.  This person has limited handling and fingering and should avoid frequent forceful grasping, such as clenching.  This person was limited to occasional fingering with either hand and no frequent forceful grasping such as clenching a wrench with either hand.  This person was able to do frequent basic handling and simple grasping required for light work using either hand.  The VE testified that this person could perform Plaintiff's past relevant work as performed at the light level, but not per the DOT.  AR 53-54.  The answer would be the same if combining hypothetical one and five, two and five or three and five.  AR 54.

For the sixth hypothetical, the ALJ asked the VE to assume a person who could sit six hours out of eight, could stand and walk two hours and could lift five pounds frequently, less than five pounds occasionally.  This person could reach 30 percent of the time, handle 30 percent of the time, feel 30 percent of the time, push and pull 30 percent of the time, and grasp 10 percent of the time each for 30 minutes at a time out of eight hours.  The VE testified that this person could not perform Plaintiff's past relevant work or any other jobs at any skill level.  AR 54-55.

For the seventh hypothetical, the ALJ asked the VE to assume a person who could lift and carry two pounds, could stand 25 minutes at a time, could sit 30 minutes at a time, could walk one and a half blocks at a time and could grip and grasp things for two to three seconds at a time and then must rest his hands for five minutes.  The VE testified that there was no past relevant work and no other work that this person could perform.  AR 55-56.

<u>Medical Record</u>

On October 3, 2008, Plaintiff sought emergency room treatment for complaints of lightheadedness, dizziness, near syncope, weakness and blurred vision.  He was given glucose and Ativan.  AR 224-28.  Dr. Ronald Smith prepared an emergency room report, noting that Plaintiff tested positive for cocaine, which probably explained his symptoms.  AR 234-36, 237.

On October 24, 2008, Plaintiff sought follow-up treatment for hypertension with Dr. Chi Nguyen.  Plaintiff reported that he had not worked for the last three weeks, he could not make a fist with both hands and he could not grip anything.  Plaintiff had called an ambulance a week earlier because his blood glucose went down to 70.  On examination, Plaintiff was unable to flex the fingers of either hand "all the way."  Dr. Nguyen assessed finger tendinitis, hypertension and diabetes mellitus type 2.  AR 332.

On November 1, 2008, Plaintiff again sought emergency room treatment for complaints of chest tightness radiating to his right arm, along with shortness of breath.  First cardiac enzyme was negative and an EKG showed no ischemic pattern.  Plaintiff's urine drug screen was positive for cocaine.  Dr. Chi Nguyen noted that Plaintiff had a history of arthritis and was unable to make a fist with both hands.  Plaintiff had been referred to Dr. Lee for evaluation, but failed to show.  Following examination, Dr. Nguyen diagnosed angina, ruling out myocardial infarction, substance abuse, elevated creatinine of 1.5, ruling out renal insufficiency due to chronic hypertension, history of hypertension, history of diabetes mellitus type II.  AR 240-42, 250, 252.

On November 4, 2008, Plaintiff returned to Dr. Nguyen for follow-up after discharge from the hospital for chest pain.  Plaintiff's cardiac enzymes were negative for myocardial infarction.  Following examination, Dr. Nguyen assessed diabetes mellitus type 2, hypertension and chest pain, rule out coronary artery disease.  AR 331.

On November 7, 2008, Dr. J. R. Lee indicated that Plaintiff had multiple tendonitis, a stiff hand and was unable to make a full fist.  He also had a trigger finger that was not currently locking.  Dr. Lee authorized occupational therapy for bilateral hand stiffness.  AR 287-89.

On December 16, 2008, Dr. Emmanuel Fabella completed a consultative internal medicine evaluation.  Plaintiff complained of chest pain, diabetes, hand pains and pains in the ankles and feet.  On physical examination, Plaintiff was able to generate 25 pounds of force using his right hand and 20 pounds of force using his left hand.  He had normal gait and balance. His peripheral pulses were 4/4 and symmetrical.  He had no joint deformities, effusions, warmth swelling, crepitus or pain on motion in his extremities.  Examination of his hands showed pain in the second and third metacarpophalangeal joint bilaterally with flexion of greater than 90 degrees.  He had normal muscle bulk and tone and strength of 5/5 throughout without focal motor deficits.

Dr. Fabella diagnosed chest pain with recent hospitalization that could be related to cocaine use, anterior chest wall tenderness worsened by deep inhalation, suggestive of costochondritis, type 2 diabetes mellitus under reasonable control, arthralgias of the second and third metacarpophalangeal joints bilaterally, bilateral foots pain consistent with plantar fasciitis and uncontrolled hypertension.  Dr. Fabella opined that Plaintiff could lift and carry without limitations.  He could walk, stand or sit without restrictions and could climb, balance, kneel, crawl, bend, crouch and stoop.  He also could walk on uneven terrain, climb ladders and work at heights.  He had bilateral impairment in fine and gross manipulation with respect to both hands because of metacarpophalangeal arthralgias of unclear etiology.  AR 254-59.

On December 16, 2008, Dr. Nguyen reported that Plaintiff's blood tests were negative for rheumatoid arthritis, but Plaintiff still had a problem with his fingers and may need trigger finger release as planned by Dr. Lee.  AR 323.  Plaintiff was unable to flex his fingers.  AR 324.

On December 19, 2008, Dr. Lee saw Plaintiff in the ortho clinic and advised that Plaintiff did not need surgery.  AR 322.

On January 15, 2009, Plaintiff was taken to the emergency department by the Tulare Police Department for medical clearance following complaints of chest pain after using cocaine. The attending physician noted that Plaintiff smokes tobacco, drinks alcohol occasionally and uses cocaine.  The physician encouraged Plaintiff to not use drugs and "spent 30 minutes" discussing the importance of quitting the use of nicotine products.  A cardiovascular examination was negative and an EKG was normal.  A chest x-ray showed a questionable left lower lobe nodule versus artifact.  The physician diagnosed chest pain of an unclear etiology, hyperglycemia, acute renal insufficiency and possible left lower lobe solitary pulmonary nodule versus artifact versus other etiology.  Plaintiff complained of acute pain and was given nitroglycerin, Ativan, aspirin and was admitted to telemetry.  Dr. Truc Nguyen also examined Plaintiff and diagnosed chest pain, rule out myocardial infarction, stable diabetes mellitus and controlled hypertension.  AR 262-63, 271, 291-92.

On January 20, 2009, Dr. S. Reddy, a state agency medical consultant, completed a Physical Residual Functional Capacity Assessment form.  Dr. Reddy opined that Plaintiff could lift 20 pounds occasionally, 10 pounds frequently, could stand and/or walk about 6 hours in 8-hour workday, could sit about 6 hours in an 8-hour workday.  He had a light RFC with no frequent forceful push or pull with either hand.  Dr. Reddy further opined that Plaintiff had a light RFC with no frequent forceful grasping, occasional fingering and frequent simple grasping and basic handling.  Plaintiff frequently could climb ramps and stairs, but could never climb ladders, ropes or scaffolds because of a history of flexor tendinitis of hands.  Plaintiff frequently

could stoop, kneel, and crouch and occasionally could crawl.  He was limited to occasional fingering with either hand with no frequent forceful grasping, such a clenching a wrench with either hand, but was able to do frequent basic handling and simple grasping required for light work using either hand.  He had no visual, communicative or environmental limitations.  AR 303-09.

On January 22, 2009, Plaintiff reportedly saw Dr. Lee for his hands.  Treatment notes indicated no surgery and that Plaintiff was to be referred for therapy.  AR 320.  On January 23, 2009, Plaintiff was referred for evaluation of tendonitis of both hands.  AR 290.

On March 10, 2009, Plaintiff complained of pain on both hands and reported that Ibuprofen was not working.  He was assessed with diabetes mellitus and hypertension.  AR 315-16.

On March 25, 2009, Plaintiff was unable to make a fist with both hands.  On examination, Plaintiff had tenderness of his fingers and was unable to flex.  AR 317.

On April 22, 2009, Plaintiff reported that he saw Dr. Lee three times and was told that he had tendonitis of the fingers.  On examination, Plaintiff had mild swelling of the hands and was unable to flex his fingers all the way.  Dr. Nguyen diagnosed hand arthritis and tendonitis.  AR 467.

On May 1, 2009, Greg Hirokawa, PhD, completed a consultative psychiatric evaluation.  Plaintiff reported feeling depressed, anxious, having mood swings, easily frustrated, irritable and with short-term memory problems.  Plaintiff claimed that his symptoms of depression and anxiety were primarily due to his physical problems.  In providing his social history, Plaintiff indicated that he was in special education classes from the 9th through the 12th grade.  As to activities of daily living, Plaintiff reported that he was unable to do any chores around the house.  During a typical day, he sits around the house and watches television.  He also enjoys going to church and spending time with family members.  On mental status exam, Plaintiff's mood

appeared mildly depressed with a restricted affect.  Dr. Hirokawa diagnosed adjustment disorder with mixed emotional features and assigned Plaintiff a Global Assessment of Functioning ("GAF") of 61.  Dr. Hirokawa believed that Plaintiff's symptoms of depression and anxiety appeared to be within the mild range and he had mild limitations for most work activities.  AR 333-37.

On May 21, 2009, A. Middleton, PhD, a state agency consultant, completed a Psychiatric Review Technique form.  Dr. Middleton opined that Plaintiff had mild restriction of activities of daily living, mild difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence or pace.  AR 338-48.

Dr. Middleton also completed a Mental Residual Functional Capacity Assessment form.  Dr. Middleton opined that Plaintiff was not significantly limited in his abilities for understanding and memory, sustained concentration and persistence, social interaction and adaptation. AR 349-51.

On July 14, 2009, Plaintiff sought emergency room treatment for complaints of right-sided chest pain, along with some mild epigastric discomfort.  Plaintiff had a normal chest x-ray, a normal EKG and negative cardiac enzymes.  Plaintiff was admitted to telemetry for further diagnostic workup, but decided to sign out of the emergency department against medical advice.  AR 417-23.  A drug screen was positive for cocaine.  AR 425.

On August 10, 2009, Plaintiff complained of pain in the fingers of his hands, finger swelling and the inability to make a fist.  On examination, Plaintiff had swelling of his fingers and could not flex his fingers all the way.  Dr. Nguyen diagnosed arthritis of the fingers and diabetes mellitus not under control.  AR 465.

On August 13, 2009, Plaintiff sought emergency treatment for chest pain radiating to his right arm.  An EKG showed normal sinus rhythm and the first cardiac enzymes were negative. In the emergency room, Plaintiff denied illicit drug use.  However, a urine drug screen was

positive for cocaine.  The next day, following examination, Dr. Nguyen indicated that Plaintiff's chest pain was most likely related to his illicit drug use and anxiety, but Plaintiff was admitted for 24-hour observation to rule out myocardial infarction.  AR 335, 357-58, 369-70, 399.

On September 23, 2009, Plaintiff was unable to flex the fingers of both hands.  Dr. Nguyen diagnosed arthritis of the fingers and questioned whether Plaintiff had tendonitis.  AR 461.

On December 10, 2009, Plaintiff complained of pain on both hands.  On examination, he was unable to flex his fingers all the way.  He was diagnosed with arthritis/tendonitis of the fingers.  AR 457.

On April 13, 2010, Plaintiff sought treatment to extend his disability and complained of severe pain on his hands and swelling.  On examination, Plaintiff had swelling and tenderness of his fingers.  Dr. Nguyen diagnosed acute inflammation of parts of Plaintiff's fingers and prescribed Tylenol and prednisone.  AR 452.

On July 8, 2010, Dr. Nguyen diagnosed diabetes mellitus and tendonitis of fingers.  AR 450.

On September 1, 2010, Plaintiff sought treatment from Dr. Nguyen for pain on the fingers of both hands.  On examination, Plaintiff had swelling and tenderness of his fingers and could not shake hands.  AR 447.

On September 24, 2010, Dr. Nguyen noted that Dr. Lee wanted to do surgery on Plaintiff's hands, but insurance would not cover it.  On examination, Plaintiff was unable to flex all of his fingers and had swelling and tenderness of his hands.  Dr. Nguyen questioned if Plaintiff had tendonitis of the fingers and prescribed Tylenol.  AR 446.

On the same day, Dr. Nguyen completed a Medical Report for the TulareWORKS program.  Dr. Nguyen indicated that Plaintiff had a physical incapacity that prevented or substantially reduced his ability to work full time at his customary work for an expected duration

of over one year.  Plaintiff did not have a physical or mental incapacity that prevented or

substantially reduced his ability to care for his children.  Dr. Nguyen listed Plaintiff's diagnosis

as inflammation of fingers of both hands and possible tendonitis with a poor prognosis.  AR 443.

Dr. Nguyen also completed a Questionnaire and indicated that Plaintiff did not have

complications from diabetes that precluded him from performing any full-time work at any

exertional level.  Dr. Nguyen identified Plaintiff's primary impairments as inflammation of

fingers of both hands, along with pain and swelling of his fingers.  Plaintiff was "unable to flex

all the way the fingers of both hands."  He also has a history of depression and anxiety.  Dr.

Nguyen opined that Plaintiff could sit 6 hours in an 8-hour workday and could stand/walk 2

hours in an 8-hour workday.  He could lift less than 5 pounds frequently and could lift less than 5

pounds occasionally.  In an 8-hour workday, Plaintiff could perform reaching for 30% of the day,

handling for 30%, feeling for 30%, pushing/pulling for 30% and grasping for 10%.  Plaintiff

could reach for 30 minutes at one time, could handle for 30 minutes at one time, could feel for 30

minutes at one time, could push/pull for 30 minutes at one time and could grasp for 5 minutes at

one time.  AR 444-45.

ALJ's Findings

The ALJ found that Plaintiff had not engaged in substantial gainful activity since his

application date.  The ALJ further found that Plaintiff had the severe impairments of

hypertension, diabetes mellitus type II, history of chest pain-rule out coronary artery disease,

arthralgias hands, finger tendonitis and bilateral plantar fasciitis feet.  Despite these impairments,

the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to lift and

carry 20 pounds occasionally, 10 pounds frequently, and to sit, stand and/or walk 6 hours each in

an 8-hour day.  He could never climb ladders, ropes or scaffolds.  He occasionally could crawl

and occasionally could finger using either hand.  He frequently could balance, stoop, kneel,

crouch or climb ramps or stairs.  He could not frequently forcefully push or pull with either hand.

He could not frequently forcefully grasp, such as clenching a wrench, with either hand.  He could do frequent basic handling and simple grasping required for light work using either hand.  With this RFC, the ALJ concluded that Plaintiff could perform his past relevant work.  AR 10-14.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. 405(g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c(a)(3)(A).  A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do his previous work, but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th

Cir. 1990).

        In an effort to achieve uniformity of decisions, the Commissioner has promulgated

regulations which contain, inter alia, a five-step sequential disability evaluation process.  20

C.F.R. § 416.920(a)-(g).  Applying the process in this case, the ALJ found that Plaintiff: (1) had

not engaged in substantial gainful activity since October 23, 2008; (2) has an impairment or a

combination of impairments that is considered "severe" (hypertension, diabetes mellitus type II,

history of chest pain-rule out coronary artery disease, arthralgias hands, finger tendonitis and

bilateral plantar fasciitis feet) based on the requirements in the Regulations (20 C.F.R. §

416.920(c)); (3) does not have an impairment or combination of impairments which meets or

equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; and (4) can

perform his past relevant work.  AR 10-14.

        Here, Plaintiff claims the ALJ erred by: (1) rejecting the opinion of Dr. Nguyen; (2)

improperly evaluating Plaintiff's testimony and third party statements; and (3) improperly

determining Plaintiff's RFC.

## **DISCUSSION**

### A.  Treating Physician Opinion

        Plaintiff contends that the ALJ gave insufficient reasons to reject the opinion of his

treating physician, Dr. Chi Nguyen.

        Generally, the opinion of a claimant's treating physician is entitled to more weight than

the opinions of doctors who do not treat the claimant.  20 C.F.R. § 416.927(c)(2); *Orn v. Astrue*,

495 F.3d 625, 631-32 (9th Cir. 2007).  If there is substantial evidence in the record contradicting

the opinion of the treating physician, then such an opinion is not entitled to controlling weight.

*Id.* at 632.  Even in that instance, however, the opinion of a treating physician is still entitled to deference.  *Id.*  If the ALJ disregards the opinion of a treating physician, he must make findings setting forth specific and legitimate reasons for doing so.  *Id.*

Here, the ALJ did not assign Dr. Nguyen's opinion controlling weight, finding it to be "overly restrictive" and "not consistent with other evidence."  AR 13.  As noted, if a treating physician's opinion "is not well-supported" or "is inconsistent with other substantial evidence in the record," then it should not be given controlling weight.  *Id.* at 631.

Plaintiff argues that the ALJ "does not explain why [the opinion] is overly restrictive nor does he cite the evidence which specifically supports his assertion."  Opening Brief, p. 5.  This argument is without merit.  In rejecting Dr. Nguyen's opinion as overly restrictive, the ALJ first noted that Dr. Nguyen listed Plaintiff's primary impairments as inflammation, pain and swelling of the fingers of both hands, but limited Plaintiff to standing and walking 2 hours a day "without explanation or comment as to how finger symptoms impeded standing and walking."  AR 13.  Although Plaintiff contends that Dr. Nguyen limited him to a sedentary RFC due to diabetes, this is mere conjecture.  Dr. Nguyen's opinion did not attribute any limitations (or any complications) to diabetes.  AR 444.

Plaintiff contends that if the ALJ "felt that this treating opinion was missing necessary information to evaluate it," then he had the obligation to recontact the physician.  However, the ALJ's duty to recontact a treating physician is triggered only "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."  *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).  The record before the ALJ was neither ambiguous nor inadequate to allow for proper evaluation of the evidence regarding Plaintiff's diabetes or any resulting limitations from such impairment.

Next, the ALJ noted that Dr. Nguyen "mentions unidentified additional work limitations secondary to depression and anxiety, but does not quantify those, and . . . the bulk of the

evidence supports a finding that the claimant's mental impairments are nonsevere."  AR 13.

Plaintiff does not argue that his mental impairments were severe and he does not point to

evidence of any limitations secondary to depression and anxiety.  Accordingly, the ALJ properly

discounted this portion of Dr. Nguyen's opinion as unsupported by the record.  *Orn*, 495 F.3d at

631.

 Additionally, the ALJ also considered Dr. Nguyen's "check-blocks State Welfare form,"

which stated that Plaintiff was temporarily disabled for over one year and referenced finger

inflammation and tendonitis with poor prognosis.  AR 13.  The ALJ accorded this opinion "little

weight" for multiple reasons.

 First, the ALJ properly discounted the opinion because it lacked a specific assessment of

Plaintiff's functional limitations.  *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 20)02)

(ALJ need not accept brief and conclusory findings); *Batson v. Comm'r of Social Sec. Admin.*,

359 F.3d 1190, 1195 (9th Cir. 2)004) (ALJ may discredit a treating physician's opinion that is

conclusory, brief, and unsupported by objective medical findings).

 Second, the ALJ correctly confirmed that Dr. Nguyen's conclusion of disability invaded

an opinion reserved to the Social Security Administration.  20 C.F.R. § 416.927(d); Social

Security Ruling 96-5p (determination of whether an individual is disabled is an issue reserved to

the Commissioner).

 Third, the ALJ appropriately discounted Dr. Nguyen's opinion because it was not

consistent with other evidence, including independent findings by the consultative examiner that

Plaintiff had normal motor strength in all extremities, normal muscle tone and normal bulk.  *Orn*,

495 F.3d at 631 (treating physician's opinion need not be given controlling weight if it is

inconsistent with other substantial evidence in the record); *see also Tonapetyan v. Halter*, 242

F.3d 1144, 1149 (9th Cir. 2)001) (consultative examiner's opinion may serve as specific and

legitimate reason to reject opinion of treating physician and serve as substantial evidence).

For these reasons, the Court finds that the ALJ's evaluation of Dr. Nguyen's opinion is supported by substantial evidence and free of legal error.

**B.   Evaluation of Testimony**

1.   Plaintiff's Testimony

As an initial matter, Plaintiff argues that the ALJ failed to fairly evaluate his testimony. Specifically, Plaintiff complains that the ALJ ignored his testimony "for the most part" and his testimony was "misstated or taken out of context."  Opening Brief, p. 6.  However, Plaintiff does not cite specific testimony that the ALJ ignored or misstated.

Plaintiff also asserts that the ALJ failed to report his testimony "fully or sufficiently" and even failed to "enlist much testimony" at the hearing.  Plaintiff further asserts that the ALJ "spent five pages of rules for Plaintiff in testifying[,] followed by a series of mostly canned and leading questions."  Opening Brief, p. 7.  Plaintiff's assertions are unavailing.  The mere quantity of testimony elicited by the ALJ does not suggest error.  This is particularly true given that Plaintiff's counsel also had an opportunity to elicit testimony from Plaintiff.

Plaintiff next argues that the ALJ erred in his reasons for finding Plaintiff's credibility to be "extremely poor."  An ALJ must make specific findings and state clear and convincing reasons to reject a claimant's symptom testimony unless affirmative evidence of malingering is suggested in the record.  *Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1993); *see also Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009).  Here, there was no affirmative evidence of malingering and therefore the ALJ was required to provide clear and convincing reasons to discredit Plaintiff's testimony.

In finding Plaintiff's credibility "extremely poor," the ALJ first noted that Plaintiff had a "dismal work history" with no full years of substantial gainful activity in his entire life.  AR 13. A poor work history is a relevant factor in assessing a claimant's credibility.  *See Thomas*, 278

F.3d at 95 (claimant's "extremely poor work history" was a specific, clear and convincing reason for a negative credibility determination).  Plaintiff does not challenge this finding by the ALJ.

Second, the ALJ considered Plaintiff's inconsistent reports about his participation in special education, noting that Plaintiff told the psychological consultative examiner that he had been in special education in high school, but had earlier denied being in special education.  AR 13, 165, 334.  In weighing a claimant's credibility, an ALJ properly may consider inconsistencies in testimony.  See *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 19 87).  Plaintiff takes issue with the ALJ's reasoning, positing that there could have been a typing error in the CE report.  This is simply speculation.   The examiner clearly stated that "claimant reported being in special education classes from the 9th through the 12th grade."  AR 334.  Plaintiff also suggests that the ALJ could have obtained school records to verify the statement or could have asked Plaintiff about the inconsistency.  Opening Brief, p. 7.  However, the ALJ asked about education at the hearing and both Plaintiff and his counsel had an opportunity to clarify any discrepancies in the record.  AR 28.

Third, the ALJ considered Plaintiff's inconsistent reports regarding drug use, citing Plaintiff's denial of drug use to at least two physicians while the medical record contained multiple positive toxicology reports for cocaine and a positive result for "TCA."  AR 13.  A lack of candor about drug use supports an ALJ's negative conclusions regarding a claimant's veracity. *See* *Thomas*, 278 F.3d at 959 (upholding adverse credibility determination where claimant made inconsistent statements about her drug use).  Plaintiff does not challenge this reason for the ALJ's adverse credibility determination.

Fourth, the ALJ found that Plaintiff's conviction for fraud, a crime of moral turpitude, lessened his credibility.  AR 13.  An ALJ may rely on a claimant's convictions for crimes of moral turpitude as part of a credibility determination.  *See* *Albidrez v. Astrue*, 504 F.Supp.2d 814, 822 (C.D. Cal. 20 07) (convictions involving moral turpitude are a proper basis for an adverse

credibility determination); *Kral v. Astrue*, 2011 WL 4383111, *7 (E.D. Cal. 2011) (same). Further, an ALJ may consider "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Orn*, 495 F.3d at 636 (ALJ may consider claimant's reputation for truthfulness in assessing credibility). Plaintiff does not contest the ALJ's findings regarding his former fraud conviction. Rather, Plaintiff incorrectly suggests that the conviction is the sole reason for the ALJ denying benefits in this case.

Fifth, and finally, the ALJ considered Plaintiff's inconsistent reports about his compliance with treatment, indicating that Plaintiff asserted compliance, but continued to smoke against medical advice. AR 13. Plaintiff believes that his cigarette use is not a material factor demonstrating noncompliance with treatment recommendations. Even if the ALJ's reference to smoking was error, the ALJ has presented other independent bases for discounting Plaintiff's testimony. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009).

For the reasons stated, the Court finds that the ALJ provided clear and convincing reasons to discredit Plaintiff's testimony.

## 2. Third Party Testimony

Plaintiff contends that the ALJ provided insufficient rationale for rejecting the third party statement of his girlfriend, Tara Choate. If an ALJ disregards the testimony of a lay witness, the ALJ must provide specific reasons germane to the witness. *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009); *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006); *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

Here, the ALJ correctly noted that portions of Ms. Choate's statements regarding Plaintiff's affected areas were "generally vague and unquantified." AR 13, 196-201. The ALJ acknowledged Ms. Choate's statement that Plaintiff was limited to walking 1 block, but properly rejected this limitation because it was not supported by the medical opinions of the consultative

examiner and state agency physicians.  *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (ALJ

may discount lay testimony that conflicts with medical evidence).  Further, Ms. Choate's

testimony described the same limitations as Plaintiff's testimony (AR 203-09), which the ALJ

properly rejected.  Thus, even if the ALJ failed to give germane reasons for rejecting Ms.

Choate's testimony, any such error is harmless.  *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir.

2012) ("Although the ALJ erred in failing to give germane reasons for rejecting the lay witness

testimony, such error was harmless given that the lay testimony described the same limitations as

[claimant's] own testimony, and the ALJ's reasons for rejecting [claimant's] testimony apply

with equal force to the lay testimony.").

**C.  Residual Functional Capacity**

Plaintiff argues that the ALJ did not properly review all of the evidence in determining

the RFC.  To support this argument, Plaintiff first contends that the RFC is inconsistent with the

Step 2 findings of severe impairments of diabetes and plantar fasciitis because the ALJ attributed

no functional limitations to these impairments.  However, it is well-established that an ALJ is not

required to include all the limitations from the impairments deemed severe at step two in the

final RFC analysis.  *Bray*, 554 F.3d at 1228-29.

Second, Plaintiff faults the ALJ for failing to report all of the findings in his evidence

review, claiming the ALJ cited only Exhibit 7F.  However, Plaintiff overlooks the entirety of the

ALJ's decision, which cites not only Exhibit 7F, but also Exhibits 3E, 10E, 1F, 2F, 3F, 5F, 6F,

8F, 9F, 10F, 11F, 12F, 13F and 14F.  AR 10, 12, 13.  Plaintiff also fails to identify the findings

or the exhibits that he believes the ALJ failed to consider.

Third, Plaintiff contends that the ALJ erred by relying on the opinions of Drs. Fabella and

Reddy and by not considering recent evidence.  As an example, Plaintiff cites evidence of

uncontrolled hypertension with acute renal insufficiency, but fails to identify any functional

limitations attributable to this impairment.  Opening Brief, p. 11.  As another example, Plaintiff

cites evidence of hand problems bilaterally, but apparently overlooks the ALJ's consideration of Plaintiff's "limited treatment for finger tendonitis," arthralgias of the hands" and RFC findings related to Plaintiff's ability to grasp.  AR 12.

Fourth, Plaintiff argues that the ALJ "failed to explain adequately why he rejected the treating source and CE opinion evidence about hand problems and limitations."  Opening Brief, p. 11.  As discussed above, the ALJ properly evaluated the opinion of Plaintiff's treating physician, Dr. Nguyen.  As to the opinion of Dr. Fabella, the ALJ considered his objective opinion regarding Plaintiff's adequate grip strength, along with his assessment of bilateral and fine and gross motor hand impairments.  AR 12. The ALJ also noted, however, that Dr. Fabella did not quantify Plaintiff's fine and gross motor hand impairments or identify any exertional limitations from such impairments.  As to this issue, the ALJ assigned greater weight to the opinion of the state agency consultant, finding that Plaintiff was able to perform a restricted range of light work and could not frequently forcefully push, pull or grasp with either hand, but could do frequent basic handling and simple grasping required for light work.  AR 12.  The ALJ determined that these exertional limitations were entirely consistent with Dr. Fabella's objective hand motor strength testing.  AR 12-13, 254-59.  Reports of a non-examining advisor may serve as substantial weight when they are supported by other evidence in the record and are consistent with it. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).  The ALJ also accepted the opinion of the state agency consultant because it afforded some deference to Plaintiff's pain complaints.

For the reasons stated, the Court finds that the ALJ properly evaluated the medical evidence in assessing Plaintiff's RFC.

## **RECOMMENDATION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence and is based on proper legal standards.  Accordingly, the Court

RECOMMENDS that Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be DENIED and that JUDGMENT be entered for Defendant Michael J. Astrue and against Plaintiff Larry Kennedy Jenkins.

These Findings and Recommendations are submit-ed to the Honorable Anthony W. Ishii, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 631(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within **fourteen (14) days** after being served with a copy, any party may serve on opposing counsel and file with the court written objections to such proposed findings and recommendations.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within **fourteen (14) days** after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1).

IT IS SO ORDERED.

Dated:   **December 13, 2012**                          /s/ *Dennis L. Beck*
                                                      UNITED STATES MAGISTRATE JUDGE

22